Mr. Vincent Tilford, President Arkansas Development Finance Authority 100 Main Street, Suite 200 Little Rock, Arkansas 72203
Dear Mr. Tilford:
This is in response to your request for an opinion regarding A.C.A. § 21-12-101 (1987), which provides:
 (a) Persons whose principal function in state employment is to apply for or assist in the preparation of applications for state or federal grants shall not, for a period of one (1) year after leaving state employment, assist, for compensation, other persons applying for grants of state or federal funds.
 (b) Any person violating this section shall be subject to a fine not exceeding five thousand dollars ($5,000).
Enclosed with your correspondence are copies of letters sent by Mr. John Harris, an Assistant Attorney General who represents both the Arkansas Development Finance Authority (ADFA) and the Arkansas Industrial Development Commission (AIDC), to Mr. Robert Middleton, Mr. Harold Hunter and Ms. Jane Ahrend in which the following is stated:
 Arkansas Industrial Development Commission (AIDC) has been informed from the Arkansas Development Finance Authority (ADFA) that you have assisted in the preparation of applications for grants under the HOME program.[1]
 I must remind you that pursuant to A.C.A. § 21-12-101
(1987) you are prohibited for one year after you left employment with AIDC to assist other individuals applying for grants of state or federal funds. If AIDC determines that any future violations of A.C.A. § 21-12-101 has occurred, we will be forced to file a complaint against you. [Emphasis in original.]
In your correspondence, you state that after the aforementioned letters were sent, ADFA contacted Mr. Harris and informed him that ADFA was not aware of any grant applicants receiving assistance from the individuals named in the letters. You also state that ADFA has not received a grant application from Hunter Company, Inc., a nonprofit corporation, for HOME funds but that Hunter Company, Inc. has applied for and been granted CHDO status, which you indicate is a special type of status awarded to nonprofit corporations under the HOME program.[2] You further state that Mr. Harris indicated in the letters sent to the individuals named above that A.C.A. § 21-12-101 prohibits former employees of AIDC from assisting other individuals in their applications for state and/or federal grants but that the letters do not specifically state that the former employees are barred from applying on their own behalf. With respect to this matter, you have asked for an opinion on the following question:
 If Hunter Company, Inc. applies for funds on their own behalf and their application meets all program requirements, should they be denied access to those funds based on A.C.A. § 21-12-101 or any other section of the Arkansas Code Annotated?
With respect to this matter, it is my understanding that the Hunter Company was founded and incorporated by Mr. Harold Hunter and that Ms. Jane Ahrend and Mr. Robert Middleton are employees of, or at least associated in some formal capacity with, Hunter Company, Inc. It is also my understanding that Mr. Hunter, Ms. Ahrend and Mr. Middleton are former employees of AIDC and that their primary responsibilities while at AIDC consisted of preparing applications for state and federal grants. Additionally, although you state in your correspondence that ADFA has not "received an application from the Hunter nonprofit organization for HOME funds," it is my understanding that Hunter Company, Inc. has, in fact, made such an application. Since it is indicated that Hunter Company, Inc. has been certified as a CHDO, I assume that the Hunter application is for funds from the minimum fifteen percent set-aside, as discussed in footnote 2 of this opinion. Furthermore, it is my understanding that Mr. Middleton and Ms. Ahrend assisted in the preparation of this grant application.
If the foregoing is a correct statement of the facts in this case, it is my opinion that Mr. Middleton and Ms. Ahrend could be subject to the $5,000 fine set forth in A.C.A. § 21-12-101 if their employment with AIDC ended less than one (1) year ago. Based on the facts as I understand them to be, Mr. Middleton and Ms. Ahrend would certainly fall within the scope of § 21-12-101
since their principal function with AIDC was to apply for or assist in the preparation of applications for state or federal grants and since they apparently will be compensated for assisting Hunter Company, Inc. in the preparation of a grant application for HOME funds. With respect to Mr. Hunter, it is my opinion that he too could be subject to the $5,000 fine provided for in A.C.A. § 21-12-101. Although A.C.A. § 21-12-101(a) prohibits individuals as described therein from assisting, for compensation, other persons applying for grants of state or federal funds, and although you appear to interpret this provision as not applying to Mr. Hunter since he is applying for the HOME funds "on [his] own behalf" (I assume you mean as a director or member of the corporation which he formed) and thus not technically assisting other persons, it is my opinion that Mr. Hunter could fall within the scope of the statute if indeed he is compensated for his role in preparation of the grant application. The general rule is that a corporation is a separate and distinct entity from its members (see generally ArkansasIron and Metal Co. v. First National Bank of Rogers,16 Ark. App. 245, 701 S.W.2d 380 (1985)), and thus Mr. Hunter could, in my opinion, be viewed as assisting an entity (the corporation) and not himself in applying for the grant. Of course, a conclusive determination as to whether any of these individuals have, in fact, violated the provisions of A.C.A. § 21-12-101 will require a factual inquiry, which is beyond the scope of an Attorney General opinion.
While it is my opinion that Mr. Hunter, Mr. Middleton and Ms. Ahrend could be subject to the fine set forth in A.C.A. §21-12-101, that statute, in itself, would not preclude the award of HOME funds to Hunter Company, Inc. Section 21-12-101 addresses only the sanction for former state employees who have violated its provisions; the statute does not address the effect, if any, on the grant application which a former employee has assisted in preparing. However, federal law and regulations regarding the HOME program and CHDOs should certainly be consulted, as there could well be provisions therein which would preclude Hunter Company, Inc. from receiving HOME monies or the set-aside funds for CHDOs due to the fact of the three individual*s previous employment as grant writers with AIDC. Finally, although there appears to be no state law prohibiting an award of the grant funds to Hunter Company, Inc., it should be emphasized that an award of monies to Hunter certainly could create an appearance of impropriety for the Arkansas Development Finance Authority. In my opinion, to award funds to a company whose grant application has been prepared by persons who possibly have violated a state law due to their participation in the preparation of the grant (i.e. A.C.A. § 21-12-101, as discussed above) is highly questionable and contrary to the public policy of this state.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:NAH/cyh
[1] The HOME program is a federal program which is under the auspices of the United States Department of Housing and Urban Development (HUD). It is my understanding that ADFA is the state entity which administers the HOME program in Arkansas, reviews the grant applications for HOME funds, and awards the funds to the successful applicants.
[2] To qualify as a Community Housing Development Organization ("CHDO") under regulations of the United States Department of Housing and Urban Development (HUD), an entity must be a not-for-profit, community-based service organization that has, or intends to retain, staff with the capacity to develop affordable housing for the community it serves. See generally24 C.F.R. Part 92 and United States Department of Housing and Urban Development Notice CPD-94-02 (January 4, 1994) (Subject entitled: "Field Office Guidance on Community Housing Development Organizations (CHDOs) under the HOME Program"). Participating jurisdictions must invest at least 15% of their HOME allocation in housing owned, developed or sponsored by CHDOs; non-profit organizations not meeting the criteria for CHDOs can receive HOME monies, but these nonprofits are not eligible for any of the set-aside for CHDOs. See 24 C.F.R. § 92.300.